ST. MARC
*vs.*
LA CHAPELLA &
HARRISON.

day of payment. 3 *Term R.* 82, 83. 4 *Dallas* 371. An assignee of a negociable paper takes it subject to all the equity to which the assignor is subject, whenever he has notice actual or constructive.

---

*ST. MARC* vs. *LA CHAPELLA & HARRISON.*

hip owners lia-
e for all dama-
es occasioned by
master and joint
wner.

THE plaintiff's agent in Bourdeaux, shipped on board of the Catherine, of which the defendants were owners, and one of them master, a quantity of merchandise, for which Harrison, the master, signed bills of lading, engaging to deliver them at New-Orleans. The Catherine went to St. Thomas's, in order to land some passengers, where the merchandise was sold, and the plaintiffs claimed a sum of about twenty-five thousand dollars, stating it to be the amount which he would have received from the sale of the merchandise, in cash, after deducting the freight, duties, and all other charges, if they had been delivered according to the bill of lading, deduct-

ing the sum of three thousand dollars paid him by La Chapella, which this defendant judged the plaintiff entitled to require from him, as his proportion of the sale at St. Thomas's. Interest was also demanded.

FALL 1809,
First District.

ST. MARC
vs.
LA CHAPELLA &
HARRISON.

IT was in evidence also that while the Catherine was at St Thomas's, a British privateer was cruising off the island, a circumstance which determined the master, with the advice of some of the freighters, who were there, to sell his cargo, and proceed to New-Orleans in ballast.

*Moreau* and *Derbigny*, for the defendants. As the shipment was made in France, the consequences of it must be regulated by the laws of that country. They limit the liability of owners of vessels, for the acts of the master, and permit the owner to discharge himself by the abandonment of the vessel and freight. 1. *Ordonnance de la Marine, liv.* 2. *t.* 8. *art.* 2.

ADMITTING that the contract is to be regulated by the laws of this territory, it would seem that damages, for the misconduct of the master, may be recovered from him and the owner *in solido*. But this severe provision appears mitigated by the provision that a master of a vessel shall give security to the owner for the value of the vessel and the damages which he may cause, *Ord. of Bilboa* 224: a provision which seems controlled by the obligation imposed on the officers of the customs in Spanish ports, to require

FALL 1809,
First District

ST. MARC
*vs.*
LA CHAPELLA &
HARRISON.

surety from the owner to the amount of the value of the vessel and freight, before a clearance be granted. *Curia Philipica* 467. This reduces the liability of ship owners in Spain, to the same degree as the ordinance of France. The British statute of 7 *Geo.* 2. *c.* 15, contains the same provision, which is supposed to have been adopted by all the mercantile nations of Europe.

*Seghers*, *Alexander* and *Brown* for the plaintiff. Even, if the liability of La Chapella be to be measured by the ordinance of France, he ought to be charged to the whole extent of the plaintiff's loss, inasmuch as Harrison was not only master, but joint owner, and the vessel went to St. Thomas's in consequence of a preconcerted arrangement between the defendants, beneficial to themselves and evidently prejudicial to the plaintiff, as it hazarded his insurance. The going into St. Thomas's being only a deviation, not a barratry, which is an offence, which can be committed *against the owner* of the ship only. If the master of a ship be also the owner, he cannot be guilty of barratry. *Park* 194, 1 *Term R.* 323.

The French ordinance and the British statute were intended to afford protection to honest ship owners, against the dishonesty of captains, but not to present a legal shelter to those who participate in the guilt of the master. The latter statute expressly confines the relief to acts done *without the privity or knowledge of such owner or owners.* 3 *Bac. Abr.* 612, 613.

We contend that the extent of the defendants' liability is to be ascertained by a reference to the laws of this Territory. The Catherine was an American bottom. The plaintiff and both defendants are American citizens, and the master's engagement to carry the articles had a reference to and was to have its completion in this Territory. By the ordinance of Bilboa, which is here part of the law of the land, and which the defendants have cited, it is the duty of the master of a vessel to give security to the owner to indemnify him against all losses occasioned by his misconduct. The inference is unavoidable that the owner is liable for the whole. The part quoted out of *Curia Philipica* goes the full length of the principle we rely upon. It is there stated that the owner is answerable in all respects for the acts of the master.

This being an action sounding in damages, the only just criterion is the cash price of similar articles in the market of New-Orleans, deducting proper charges.

*By the Court*, LEWIS, J. *alone.* The defendants are liable to the plaintiff for the misconduct of Harrison, as master and joint-owner of the vessel. They must therefore be liable for the whole loss. All persons undertaking to carry goods for hire are responsible for the value of the goods at the place of delivery at the time they ought to have arrived, whenever the goods are lost by the misconduct of the carrier.

JUDGMENT FOR THE PLAINTIFF.